**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-05425-SKC

MOHAMMED JUNAEID HOSSAN PARBAS et al.,

Plaintiffs,

v.

HUIONE GLOBAL, LTD. et al.

Defendants.

---

**FILED UNDER SEAL**

# PLAINTIFFS' EMERGENCY MOTION FOR A HEARING ON THE COURT'S TEMPORARY RESTRAINING ORDER

---

Plaintiffs, by and through their undersigned counsel, respectfully move for an emergency hearing as soon as practicable on the Court's Temporary Restraining Order and request that the Court order Tether and its counsel to appear and state whether Tether has complied or is taking the steps necessary to fully comply with the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for *Ex Parte* Temporary Restraining Order, Order Freezing Assets, and Other Ancillary Relief, ECF 13 (Oct. 29, 2026) ("Order"). In support, Plaintiffs state as follows:

1. The Court ordered Tether (and others) to "immediately freeze, or assist in or facilitate the freeze of, the assets held in the Identified Addresses." Order ¶3.

2. The Order was served on Tether's General Counsel on Friday, October 30, 2026, and undersigned counsel obtained confirmation that it was received the same day.

3. Despite numerous attempts by the undersigned to obtain confirmation that Tether has effectuated or is in the process of effectuating the freeze, Tether has not provided confirmation. Earlier today undersigned counsel spoke with Daniel Ketani and Dani James of Gibson Dunn, counsel for Tether, who would not confirm that Tether is complying with the Order and could not state whether any wallet ordered to be frozen by the Court has in fact been frozen, though they sought to make clear that they were not representing Tether was refusing to comply with the Order.

4. If Tether is refusing to comply with the Order and not freezing the assets as ordered, it is not only an affront to the authority of the Court, but will severely prejudice Plaintiffs and the Court's ability to provide meaningful relief to the extent asset dissipation is continuing. Plaintiffs' expert estimates that approximately $70,000,000 of USDT assets have dissipated from the unhosted addresses in the last two weeks.

5. Moreover, without confirmation that the freeze has been effectuated, Plaintiffs cannot unseal this case or serve Defendants ahead of the November 12 hearing. Order ¶9. One third party affected by the Order has informed Plaintiffs' counsel that it has effectuated the freeze and therefore views the need to unseal this case as urgent. Based on the undersigned's experience with cryptocurrency markets, it is likely that this third party is receiving inquiries but is constrained in its ability

to respond given the sealed status of the case. *See* ECF 14. For these reasons, Plaintiffs agree that the need to confirm the asset freeze and unseal this case is urgent.

6. Complying with the Court's Order is not optional: "[a]ll orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). Accordingly, Plaintiffs respectfully request an emergency hearing at which Tether and its counsel must represent to the Court whether Tether has effectuated or is effectuating the Court's ordered freeze, or is refusing to do so.

## PROCEDURAL HISTORY

7. The Court issued the Order in this sealed case in the evening of Thursday, October 29, 2026. Plaintiffs' counsel obtained a copy of the Court's Order from the District Court Clerk at approximately 9:17 a.m. EDT on Friday, October 30, 2026. Since then, Plaintiffs' counsel has been diligently attempting to promptly effectuate the asset freeze ordered by the Court, Order ¶2, including by emailing the Order to counsel for cryptocurrency issuers Tether and Circle and cryptocurrency exchanges OKX and Binance, *id.* ¶¶3, 6, responding to numerous follow-up emails from certain of those entities, and engaging in teleconferences with their representatives as

needed. Those efforts continued from the morning of October 30, through the weekend, and until submission of this motion.

8. Only Tether has refused to state whether it has effectuated or is in the process of effectuating the freeze.[1]

**ATTEMPTS TO OBTAIN CONFIRMATION FROM TETHER**

9. On October 30, 2026, at approximately 10:32 a.m. EDT, the undersigned emailed and left a voicemail for Michael Hilliard, an attorney publicly identified as serving as Tether's general counsel or principal legal officer.

10. At approximately 1:15 p.m. EDT, the undersigned received an email from Aaron Kornblum of Kornblum Legal, who stated that Mr. Hilliard had shared the communication with him and that his firm represents Tether in certain matters. The undersigned replied promptly and counsel agreed to speak at 2:00 p.m. that day. *See* Ex. A (email correspondence between J. Tenreiro and A. Kornblum).

11. During that call, Mr. Kornblum conveyed that he had represented Tether in connection with asset freezes in the past but stated, in sum and substance, that it was Tether's policy not to "interfere" with USDT holders' property rights. In response, the undersigned pointed out that, on that very day, Tether's CEO and others in the cryptocurrency industry had publicly noted that Tether was freezing over $1 billion in USDT in response to a hack of a major cryptocurrency exchange. That freeze was

---

[1] Circle has indicated that it has substantially complied with the Court's Order. The amounts at issue in the handful of accounts Circle has not frozen are *de minimis*, representing only a few thousand dollars. Thus, Plaintiffs are not now burdening the Court with an issue representing such minuscule amounts.

presumably implemented without the need for or even the ability to obtain a court order directing an asset freeze in the time between when the hack is believed to have occurred (the evening of October 29) and when Tether and others confirmed Tether had frozen the hacked USDT. *See* Ex. B (Tweet by Tether CEO); Ex. C (Tweet by Binance officer and former CEO); *see also* Ex. G (Tether website posting dated November 2, 2026 discussing Tether's actions). Following the call, the undersigned promptly emailed Mr. Kornblum a copy of the Order and native versions of the Excel exhibits listing the Identified Assets. *See* Ex. A.

12. The undersigned also emailed Mr. Kornblum on Saturday, October 31, 2026, and again on Sunday, November 1, 2026, asking on both occasions that he confirm Tether had complied with the Order. *See* Ex. D (further email correspondence between J. Tenreiro and A. Kornblum). Mr. Kornblum has not responded to those emails or otherwise communicated with the undersigned since their October 30 call.

13. On November 2, 2026, at 9:30 a.m. EST, the undersigned received an email from Daniel Ketani of Gibson Dunn, stating that his firm was in the process of being engaged by Tether in connection with this matter and asking to speak at 4:00 p.m. EST. The undersigned exchanged emails with Mr. Ketani throughout the day, repeatedly asking that Tether confirm it had complied with the Order and requesting a call earlier than 4:00 p.m. EST. *See* Ex. E (email correspondence between J. Tenreiro and D. Ketani).

14. In response to Mr. Ketani's request, and although not required by the Order directing Tether to freeze certain assets, Plaintiffs' counsel emailed him a copy of the

Complaint, a version of the Declaration of Jason Trager submitted in support of Plaintiffs' TRO motion with paragraph numbers corrected from the misnumbered version previously submitted, and the motion underlying the Order. *See* Ex. F (email correspondence between M. Williams and D. Ketani).

15. At 5:00 p.m. EST on November 2, 2026, Plaintiffs' counsel participated in a Zoom call with Tether's counsel at Gibson Dunn, Mr. Ketani and Ms. Dani James. Tether's counsel indicated that they had received the materials, intended to confer with their clients, and would communicate their position to Plaintiffs' counsel on Tuesday, November 3, 2026. When asked, Tether's counsel did not identify a time by which they would state their position on Tuesday. The undersigned also asked whether Tether was currently effectuating the Court's freeze. Tether's counsel stated that they did not know whether any of the assets had been frozen.

## CONCLUSION

16. Despite the undersigned's persistent efforts, including answering questions and providing documents not called for by the Order, Tether has refused to confirm that it has effectuated the mandated freeze, intends to do so, or is in the process of doing so.

17. Given the emergency nature of the Order, the time remaining until the November 12 hearing, the ongoing dissipation of assets, and the resulting prejudice from noncompliance, Plaintiffs respectfully request that the Court schedule an emergency hearing as soon as practical and order Tether and its counsel to appear and state whether Tether is complying with the Order.

Dated: November 2, 2026

Respectfully submitted,

*/s/Jorge G. Tenreiro*

Avi Josefson
Michael Blatchley
Jorge G. Tenreiro
Rashelle R. James
Carolina Yu
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
avi@blbglaw.com
michaelb@blbglaw.com
Jorge.Tenreiro@blbglaw.com
rashelle.james@blbglaw.com
carolina.yu@blbglaw.com
Direct: (212) 554-1398

*/s/Mark L. Williams*

Mark L. Williams
**WILLIAMS & SERIO LLC**
1401 Lawrence St., Suite 1600
Denver, CO 80202
T: (303) 505-8000
MLW@WilliamsSerio.com

-and-

Frank Partnoy *(admission forthcoming)*
**BISHOP PARTNOY LLP**

1717 K Street, NW Suite 900
Washington, DC 20006
T: (202) 787-5769
frank@bishoppartnoy.com

*Counsel for Plaintiffs*

cc: Counsel for Tether (via email)