IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:26-cv-05425-SKC-TPO

MOHAMMED JUNAEID HOSSAN PARBAS *et al.*

Plaintiffs,

v.

HUIONE GLOBAL, LTD. *et al.*

Defendants.

---

**ORDER**

---

Before the Court is nonparty Tether International S.A. de C.V.'s ("Tether") Motion to Vacate (Dkt. 35). A brief recitation of how this case has preceded is warranted. On October 22, 2026, Plaintiffs filed their Motion for *Ex Parte* Temporary Restraining Order, Order Freezing Assets, and Other Ancillary Relief (Dkt. 3). After expedited consideration, the Court granted the TRO in part (Dkt. 13). As part of its Order, the Court ordered Tether (and others) to "freeze, blacklist, or otherwise render non-transferable the USDT and USDC held at the unhosted wallet addresses identified in Exhibit 3 to the Trager Declaration." Dkt. 13, p.32.

On November 3, 2026, Tether sent the Court a letter raising concerns with the TRO, including its position that the Court did not have jurisdiction over Tether. Dkt. 20. The same day, the Court held a telephonic hearing involving counsel for Plaintiffs

and Tether to discuss those issues. As a result of the hearing, the Court stayed the TRO as to Tether and ordered Tether to file a Motion to Vacate by November 12, 2026.

Tether filed its Motion to Vacate on November 12, 2026. Plaintiffs filed a Response on November 13, 2026 (Dkt. 38), and Tether filed a Reply on November 17, 2026 (Dkt. 40). The Court has scrutinized the briefing. For the reasons shared below, Tether's Motion to Vacate is GRANTED.

**ANALYSIS**

Plaintiffs did not address the Court's jurisdiction over Tether in its original Motion. But they acknowledge that the Court "must have personal jurisdiction to *compel Tether to enforce* the freeze," so the Court begins with this. Dkt. 38, ECF p.17 (emphasis in original); *see Gucci Am., Inc. v. Wiexing Li*, 768 F.3d 122, 134 (2d Cir. 2014) ("[A] district court can enforce an injunction against a nonparty . . . only if it has personal jurisdiction over that party."). Plaintiffs bear the burden of establishing personal jurisdiction over Tether, but the burden is light at this stage in the case. *See OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "When an evidentiary hearing has not been held, the plaintiff need only present competent proof in the form of affidavits and other written materials that, if true, would make a prima facie case that jurisdiction is proper." *Flux Drive Inc. v. Rong*, No. 25-1308, 2026 WL 3244333, at *5 (10th Cir. Oct. 30, 2026) (citing *Wenz*, 55 F.3d at 1505).

Plaintiffs argue the Court has specific personal jurisdiction over Tether based on (1) its minimum contacts with the United States and because (2) it abetted Defendants in violating the TRO. Dkt. 38, ECF p.17. Each argument is addressed below.

Tether is a foreign corporation incorporated in El Salvador and headquartered in San Salvador. Dkt. 35, ECF p.9. In their Response to the Motion to Vacate, Plaintiffs point to facts that tie Tether to the United States generally and argue this is all the Court needs to assert personal jurisdiction over the entity. Dkt. 38, ECF p.17. For example, Plaintiffs argue that Tether sells USDT to U.S. institutions and stores gold bars in Nevada. *Id.* Plaintiffs' only allegation related to Colorado is their vague reference that Tether invested in a Colorado-based company. *Id.* at ECF p.19.

Federal Rule of Civil Procedure 4(k)(2) provides that "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." In their brief, Plaintiffs talk around this rule[1] but never explicitly state that Rule 4(k) is the basis for this Court's jurisdiction over Tether. Indeed, they cannot. The plain language of the Rule makes clear it applies to *defendants*, which Tether is not.

[1] Plaintiffs only mention of Rule 4(k) comes in a footnote and does not even attempt to articulate why this Court should apply the Rule to nonparty Tether.

Instead, Plaintiffs speak in generalities about Tether's ties to the United States as a whole. Dkt. 38, ECF pp.17–19. As the cases Plaintiffs cite reveal, courts look to the contacts with the forum, here Colorado, not general contacts with the United States, to establish personal jurisdiction over a nonparty. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013) (examining contacts with New York)[2]; *see also Rong*, 2026 WL 3266333, at *8 ("Plaintiffs have adequately established that the Rong Defendants purposefully directed their activities toward Colorado."); *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008) (analyzing contacts between nonparty and Colorado).[3] In conclusion, Tether's contacts with the United States generally are not a valid basis for the Court to assert personal jurisdiction to compel Tether's compliance as a nonparty with the TRO.

[2] Plaintiffs' citation to this case in their Response is concerning. They stated that repeated use of the United States banking system constitutes "purposeful availment of [the U.S.'s] dependable and transparent banking system." Dkt. 38, ECF p.18 (alteration in Response brief). But in *Licci*, the court refers to *New York's* dependable and transparent banking system. *Licci*, 732 F.3d at 171. Plaintiffs' replacement of "New York" with "the United States" misrepresents the context of the quoted excerpt and the analysis in *Licci*, which was directly related to the subject forum, New York, and not the United States as a whole. This was not an AI hallucination but counsel's choice to supplant "New York" with "the United States." The Court expects more precision and accuracy from counsel when making representations about cited case law. Credibility is everything.

[3] Plaintiffs also cite to *Application to Enforce Admin. Subpoenas Duces Tecum of SEC v. Knowles*, 87 F.3d 413 (10th Cir. 1996) and *In re Celsius Network LLC*, 671 B.R. 842 (Bankr. S.D.N.Y. 2025), however both cases involve party defendants and plainly implicate Rule 4(k).

In *Gucci*, the Second Circuit articulated a test for assessing whether the court may properly exercise jurisdiction over a nonparty: "[C]ourts first assess the connection between the nonparty's contacts with the forum and the order at issue, and then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice." *Gucci*, 768 F.3d at 137. This is akin to, although slightly different from, the traditional test for personal jurisdiction. *Id.* at 136; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1984). As noted above, Plaintiffs only allegation regarding Tether's contacts with Colorado is that it invested in a Colorado-based company. Dkt. 38, ECF p.19. This does not come close to establishing the requisite contacts between Tether and Colorado, nor does this jurisdictional allegation appear to be related to the Court's TRO. For these reasons, Plaintiffs have not shown the Court has specific personal jurisdiction over Tether for purposes of enforcing the TRO against it.

Plaintiffs also argue the Court can exercise personal jurisdiction over Tether because it has actual notice of the TRO and is in "active concert or participation" with Defendants to violate the TRO. Dkt. 38, ECF p.21. In the Tenth Circuit, "a district court may properly exercise personal jurisdiction over a nonparty *for purposes of entering contempt orders*, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert or participation with a party, violates that order." *ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1215–16 (10th Cir. 2011) (emphasis added). But this is not a contempt proceeding, and the

Tenth Circuit's holding is narrow.[4] With this case in its current posture, the Court cannot exercise personal jurisdiction over Tether on the theory that it had notice of the TRO and is in active concert or participation with Defendants.[5]

* * *

For the reasons shared above, Tether's Motion to Vacate (Dkt. 35) is **GRANTED**.

**IT IS ORDERED** that the Court **VACATES** that portion of the Temporary Restraining Order that orders Tether to freeze the assets held in Exhibit 3 to the Trager Declaration. **All other portions of the TRO shall remain in effect.**

**IT IS FURTHER ORDERED** that Plaintiffs shall **immediately** effectuate service on Defendants in accordance with Rule 4 or this Court's earlier orders, and that Plaintiffs promptly move to lift the seal once service is accomplished. In any event, it is **FURTHER ORDERED** that Plaintiffs shall effectuate service **no later**

---

[4] Plaintiffs attempt to distinguish cases Tether cites because they involve contempt proceedings while failing to see that *Bowers* is also a contempt proceeding and the rule it articulates is specific to contempt proceedings.

[5] Indeed, with the information that has come to the Court's attention since issuing the TRO based on Plaintiffs' earlier sworn declarations and representations, the Court questions whether Plaintiffs have demonstrated that Tether's inaction rises to the level of "active concert or participation." For example, at hearings in this case Plaintiffs have said assets continue to be dissipated from accounts it identified in their Motion. But since issuance of the TRO, whether the intended frozen accounts are part of the "Trafficking Venture" has been called into question even by Plaintiffs. Thus, whether Tether's inaction is somehow in "active concert or participation" with Defendants is currently amorphous.

**than November 27, 2026**. Should service not occur by November 27, 2026, the Court intends to sua sponte lift the seal on November 30, 2026.

DATED: November 18, 2026

BY THE COURT:

S. Kato Crews
United States District Judge